**Jerry L. HINKLE, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 2–177A10.

Court of Appeals of Indiana, Second District.

June 10, 1980.

Harriette Bailey Conn, Public Defender, John W. Bean, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Kenneth R. Stamm, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Jerry Hinkle was convicted by jury of two counts of First Degree Burglary. He raises numerous issues for our review. Our disposition, however, requires treatment of only the following:

1. Did the trial court err in admitting evidence concerning statements by an in-

formant who was deceased at the time of trial?

2.   Did the trial court err in admitting evidence of a separate and distinct criminal act?

3.   Was there sufficient evidence to support the verdicts?

The evidence adduced at trial was as follows.   The Holloway residence was burglarized on January 26, 1973.   Entry was gained through the patio door in the family room;   the glass door had been shattered. Two television sets, a camera, a clock radio and three guns were stolen.   The Bedford house was burglarized December 22, 1973. The front door jam was broken and a watch, a jewelry case, a small amount of cash and two guns were missing.   Undercover agent Raymond Lewis testified that he negotiated the purchase of two guns from Jerry Hinkle.   During the transaction, Hinkle purportedly stated that he had "been getting into places" for some time [1] and that the guns were "hot".   Further, Hinkle allegedly told Lewis that "my wife bought me the twenty-two caliber rifle and I got the rest of them myself."   However, Hinkle never specifically explained how he obtained the guns, i. e., whether by theft, purchase, etc.   Clearly, evidence was presented showing that Hinkle was in possession of some stolen firearms.   Two guns which were obtained by the police in their search of Hinkle's home were identified at trial by Merrill Holloway as his guns. · The State did not show that Hinkle was in possession of any of the Bedford's property.[2]

When Hinkle took the stand in his own defense, he claimed that he had, with cash, purchased the guns one at a time "at bars and on the street".   He could not recall how much he paid for any of the guns or from whom they were purchased, and he explained that he sold them to raise money for his overdue house payments.   In addition, he maintained that he told Lewis the guns were stolen for the sole purpose of expediting the sale.

We reverse.

## I.

■  The trial court admitted, over Hinkle's objection, evidence concerning statements purportedly made by an informant which linked Hinkle to other break-ins. The informant was deceased at the time of trial.   The statements were introduced to establish probable cause for a search.   Our review of the record discloses that probable cause was not in issue.   Hinkle made no motion to suppress evidence derived from the search;   rather, he objected to the admission of the informant's statements in the presence of the jury on the basis of irrelevancy.

The questionable testimony was elicited from Police Detective Larry Musall.   He testified as follows.

"Q.   Alright, Larry, once again would you tell us please, this is for the purposes of the probable cause for the search warrant, what it was the informant recited to you?  First of all I think you should probably give his name so there is no question.

A.   His name was Robert Crooks.

Q.   Alright, and please now recite what that information was?

A.   Okay, the information in establishing his reliability was, he advised me of several breakins that occurred and in reciting these breakins to me he advised me of the information that was related to him from Jerry Hinkle of how he actually entered the house on each breakin.   I called Mr. Holloway, I asked Mr. Holloway how his house was entered, and the information that Mr. Holloway told me was exactly what the informant told me.

Q.   Did the informant tell you where he acquired this information?

---

1.   There is conflicting evidence as to whether Hinkle said he had been "getting into places" for four to five months or for one year.

2.   Mr. Bedford testified that the rifle marked for identification purposes as the State's Exhibit Number Two was his; however, the State neither admitted the exhibit into evidence nor explained where that rifle was found.

A. The informant said that Jerry Hinkle had asked him to go with him on several breakins with him."

And on cross-examination, Musall revealed:

"Q. What is that information, besides what you have already told us about, how did he say that he learned of this information from Jerry Hinkle?

A. First-hand from Jerry Hinkle that Hinkle was bragging about the places that he had broken into."

In the absence of any issue concerning probable cause for the search, the admission of such hearsay statements was erroneous and prejudicial.

## II.

█ The trial court, over Hinkle's objection, admitted testimony from a victim of a third burglary for which Hinkle was not charged.[3] The trial court apparently admitted this evidence pursuant to the rule set forth in *Watts v. State* (1950) 229 Ind. 80, 95 N.E.2d 570, wherein it was held that evidence of separate and distinct crimes is admissible to show intent, motive, purpose, identification or a common scheme or plan.

Hinkle was charged with burglaries which occurred on January 26, 1973 (the Holloway burglary) and December 22, 1973 (the Bedford burglary). The burglary with which Hinkle was not charged, but of which evidence was introduced and admitted, the Gordon burglary, occurred on January 1, 1972. None of the prerequisites for admission of evidence of prior criminal acts, as set forth in *Watts v. State, supra,* are present here. The non-charged burglary was remote in time. There was no direct probative evidence which conclusively placed Hinkle at the scene of any of the burglaries. Although all three offenses occurred in the same county, the locations were nevertheless several miles apart.

It may be safely stated that neither "intent", "motive", nor "purpose" are at issue in the case before us. Furthermore, neither the mode of entry nor nature of the items taken in the three burglaries was indicative of any common scheme, plan, method of operation or identity.[4] *See Brooks v. State* (1st Dist. 1973) 156 Ind.App. 414, 296 N.E.2d 894. *See Loveless v. State* (1960) 240 Ind. 534, 166 N.E.2d 864; *O'Conner v. State* (4th Dist. 1978) Ind.App., 382 N.E.2d 994, 1002; *Cf. Bruce v. State* (1978) Ind., 375 N.E.2d 1042, 1077–78, *cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662.

The trial court committed error in the admission of such evidence.

## III.

█ Where a claim of insufficiency of the evidence is raised, this Court on review will look only to the evidence most favorable to the State along with all reasonable inferences therefrom. Because of our instructions to the trial court on remand, we treat the two charged burglaries separately.

█ With respect to the Bedford burglary, there were no witnesses to the burglary and no identifiable fingerprints were found at the scene. While Mr. Bedford identified one of the exhibits at trial as his gun, the State did not explain where or from whom that gun was recovered. Further, the record is devoid of any other evidence or inferences linking Hinkle to that crime. On the basis of such a record, Hinkle's conviction for Count II cannot be sustained and must be discharged. *See generally Pettigrew v. State* (2d Dist. 1975) 165 Ind.App. 390, 332 N.E.2d 795.

3. Hinkle also cites error in the trial court's failure to grant a motion in limine seeking to prohibit the introduction of the evidence in question. It is, however, the admission of the evidence at trial, and not the denial of the requested motion in limine, which constitutes error. *Lagenour v. State* (1978) Ind., 376 N.E.2d 475.

4. The Gordon burglary occurred in Gas City. Mr. Gordon testified that to gain entry the burglar broke the "back glass in the back door". The only item stolen was a color television set.

■ There is some evidence of Hinkle's complicity in the Holloway burglary. Whether, however, there is sufficient evidence upon which to base a conviction on Count I is complicated by the trial court's erroneous admission of certain evidence. The court erroneously allowed the police officer to testify that as a result of the informant's statements, Mr. Holloway, one of the burglary victims, was contacted and the method of entry in that burglary "was exactly what the informant told me." This evidence might well have provided the link inviting the jury to connect Hinkle with the Holloway burglary.

Apart from the evidence earlier discussed, the conviction for the Holloway burglary is supported by Hinkle's testimony that in order to encourage an undercover agent to purchase various firearms, at least two of which had been stolen from Holloway, he told the agent that he had been "getting into places" for a substantial prior period, and that "things were getting hot for [me]." He also testified that in his conversations with the agent, he gave clear indication that he had stolen the guns.

While it is possible, if not probable, that the jury disbelieved Hinkle when he said he indicated complicity in the theft of the firearms merely to promote a sale, we cannot affirm on that basis. We are unable to conclude as a matter of law that the evidence, independent of the erroneously admitted evidence, was overwhelmingly indicative of guilt sufficient to render the error harmless.

Accordingly, we feel compelled to order discharge with respect to Count II (the Bedford burglary) and to reverse and remand for a new trial on Count I (the Holloway burglary).

SHIELDS, J., concurs.

BUCHANAN, C. J., dissents with opinion.

BUCHANAN, Chief Judge, dissenting.

I dissent to the majority's reversal and remand of a conviction for burglary under Count I (the Holloway burglary) because there is sufficient evidence to sustain this conviction.

Admittedly the evidence which sustains Hinkle's conviction is circumstantial, however it has been repeated over and again that our standard of review of circumstantial evidence is the same as in every other case. As Justice Pivarnik recently said in *Ruetz v. State* (1978), Ind., 373 N.E.2d 152, 157:

> [W]here there are two reasonable inferences arising from the circumstantial evidence in a case, one of guilt and another of innocence, it is not the duty or right of this court to reverse simply because we might believe the circumstances do not exclude every reasonable hypothesis of innocence.

And Justice Hunter in *Jones v. State* (1978), Ind., 377 N.E.2d 1349, 1351:

> We do not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only whether an inference may reasonably be drawn therefrom tending to support the finding of the trial court.

The circumstantial evidence sufficient to sustain Hinkle's conviction of the Holloway residence can be found in these circumstances: (1) the testimony of Raymond Lewis, (undercover agent) who stated that Hinkle told him "he had been getting into places" for some time and that the guns Hinkle was attempting to sell (including the Holloway guns) were "hot"; (2) the two guns which had been testified as being stolen from the Holloway residence were located in the Hinkle residence and Hinkle could not adequately explain how the guns had come into his possession.[1]

Considering only the evidence most favorable to the State, together with all reasonable and logical inferences to be drawn therefrom, I believe that the facts recited

---

1. In my view, because there was sufficient other evidence to establish Hinkle's participation in the Holloway burglary, I do not believe that the erroneously admitted evidence of the deceased informant was harmful.

above and the inferences the jury could draw therefrom constitute sufficient evidence to sustain Hinkle's conviction of the Holloway burglary.