Robert DOTY, Appellant,

v.

STATE of Indiana, Appellee.

No. 380S61.

Supreme Court of Indiana.

April 8, 1981.

Gregory D. Ball, Wayne County Public Defender, Richmond, for appellant.

Theodore L. Sendak, Atty. Gen., Frank A. Baldwin, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Robert Doty, was convicted following a trial by jury of the crime of murder pursuant to Ind.Code § 35–42–1–1(1). He received a sentence of forty years' imprisonment. On appeal the following issues are raised:

(1) Whether the evidence was sufficient to convict.

(2) Whether the trial court erred in refusing to permit a defense witness to testify that five years before the offense alleged, appellant accidentally discharged a gun.

(3) Whether the trial court erred in permitting cross-examination of appellant beyond the scope of his direct examination.

(4) Whether the trial court erred in permitting the prosecutor to first present proof of motive on rebuttal.

■ Appellant was charged with having "knowingly" killed Willie Eaton by shooting him with a shotgun. He contends that the evidence serving to show that he had the requisite culpability at the time the gun was discharged causing the mortal wounds to Mr. Eaton was insufficient. In determining this question we do not weigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State,* (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence, direct or circumstantial, of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Glover v. State,* (1970) 253 Ind. 536, 255 N.E.2d 657.

An examination of the evidence presented at trial from this viewpoint shows that on January 22, 1979, at about 2:00 p. m. appellant was riding alone about the city of Richmond in his auto. His path crossed that of the victim Eaton who was also driving about the city accompanied by his son, one Charles Patterson, and one other person. Eaton was driving Patterson to a television supply house to get a tube. Appellant and Eaton exchanged pleasantries. Eaton invited appellant to come to church where he was preacher. Appellant's reply was not understood by the other occupants of the Eaton car; however, it was not made in an angry or threatening manner. As the cars continued on appellant fell in behind the Eaton car and as it slowed to turn, appellant struck the rear end of it. Mr. Eaton continued driving until he stopped in front of the television supply company and let Mr. Patterson out, whereupon appellant again struck the car from behind.

According to the testimony of at least three persons present at that point on the street at that time, including that of Teresa Stone, appellant emerged from his car carrying a shotgun. He pointed it at Teresa Stone, a passerby on the sidewalk who was carrying her two year old child and told her to stand still and not move. He then told Patterson as he was entering the supply house not to call the police. He then opened the driver's door of the Eaton car with his left hand and pointed the shotgun at Mr. Eaton who was behind the wheel saying, "Get your fat ass out of that car, you have fucked up." He then asked Eaton whether he was scared to which Eaton replied, "Yes", whereupon appellant shot him at point blank range, inflicting a wound in the abdomen from which he soon bled to death.

Appellant then walked back to his car, threw the gun in the front seat, got in, and drove off.

Appellant then drove to a nearby lounge, where he induced his uncle to get in the car, and held the shotgun on him while they drove off. As appellant drove along he almost struck another car, and his uncle yelled at him, and then in the excitement of the moment grabbed the gun away from appellant. The gun was loaded with five shells. Appellant then drove his uncle's home. The gun belonged to the uncle who had loaned it to appellant for hunting rabbits. Appellant said, "I blowed two away and you're next." When his uncle got out of the car, appellant said, "Take the gun and go on and I hope you get caught with it."

The uncle also testified that he had been hunting with appellant two or three times and that appellant knew how to handle firearms in a safe manner. When he recovered the gun from appellant in the car, it had the safety on.

Appellant was charged with having the "knowing" state of mind, which is defined by statute in the following manner:

"(b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2.

Appellant testified in his own defense that he intended to give Eaton the shotgun so that he could return it to his uncle, and that

in presenting Eaton with the gun, it accidently discharged causing the mortal wounds to Eaton. He also testified that he had unloaded the gun and thought that it was still unloaded, although admitting that he had been reckless in failing to check that out before giving it to Eaton. It is upon this testimony which appellant urges is uncontradicted and corroborated that he rests his claim that the evidence of culpability was insufficient. This was direct proof presented under oath by appellant which along with corroborative matters could have been accepted by the trier of fact at face value. However, it does not stand uncontradicted, as it is directly opposed by the inference arising from the proof presented by the State that appellant, knowing the gun to be loaded, took it from his car for the purpose of using it to kill Eaton. This opposing inference arises from the proof of his angry threats against bystanders and Eaton and the manner in which he aimed it at the person of Eaton and then discharged it. It was for the jury to choose which of these two versions of appellant's state of mind at the time of the shooting it would credit.

The question before this Court is not whether the jury could reasonably have accepted a construction of the evidence implying appellant's innocence, but whether it could reasonably have accepted one of his guilt. The proof presented was sufficient to warrant the jury in believing that version of events presented by the witnesses for the State and in concluding therefrom that appellant knowingly killed Eaton.

■ The claim is made that the trial court erred in refusing to permit a defense witness to testify that appellant had accidentally discharged a gun and blew a hole in the trunk of his car.

According to the offer to prove, the witness would have testified that she was sitting on her front porch and observed appellant working inside the trunk of his car. She heard a gun go off. She went to the car and saw a long gun lying down inside the trunk and saw a hole that had been blown in the trunk.

The event occurred five years prior to the incident resulting in this charge. It was but a single instance. The substance of it with regard to appellant's state of mind at the time is doubtful. It was sought to be introduced by the defense to provide a basis for the inference that appellant at the time of the shooting of Eaton had a trait or had developed a behavioral pattern or propensity to handle firearms in a careless manner. It would not render this desired inference more probable and therefore did not meet the test of relevance. *Pirtle v. State,* (1975) 263 Ind. 16, 323 N.E.2d 634. Cf. *Tolbert v. State,* (1979) Ind., 391 N.E.2d 823.

■ The claim is made that the trial court erred in permitting the prosecution to question appellant on cross-examination about an incident occurring two months before the killing of Eaton, in which appellant taunted Eaton and slapped him, and Eaton struck appellant in response. Generally the cross-examination of a witness is to be limited to the subject matter of his examination in chief. *Rusher v. State,* (1971) 256 Ind. 520, 270 N.E.2d 748. During direct examination appellant in testifying provided a basis for the inference that there was no hard feeling or dispute between him and the victim. He stated that he was acquainted with the victim, knew where he worked, and what shift he worked. He stated that the exchange with Eaton while in their cars had been friendly. He testified that he removed the shotgun from his car in order to entrust it to Mr. Eaton, and that it was within his expectations that Eaton would respond by doing him the favor of delivering it to the uncle. Through this testimony appellant sought to implant in the mind of the jury that his feelings toward Eaton were friendly and not retributive or vengeful. His defense in essence was that he had no motive. The challenged cross-examination by the trial prosecutor was upon this same subject matter and was therefore not outside the scope of permissible cross-examination as contended.

■ The claim is made that the trial court erroneously permitted the prosecution

to present proof on rebuttal of motive which appellant may have had for killing Eaton. The victim's widow and son described in detail the fight which appellant had with Eaton two months prior to the shooting. Appellant correctly states that motive is not a separate element or burden in a homicide case. He further contends that proof therefore of motive is inadmissible as irrelevant. This contention is incorrect.

> "The State is allowed, but not required, to prove that an accused had some understandable reason for committing the crime charged, because such evidence has probative value in determining whether he committed that crime." *Bruce v. State*, (1978) 268 Ind. 180, 256, 375 N.E.2d 1042.

> "All circumstances relative to or tending to shed light on the intent or motive of the defendant or tending fairly to explain his actions are admissible even though they occurred prior to the crime." *Hart v. State*, (1978) 268 Ind. 358, 359, 375 N.E.2d 221.

Here, appellant's hostile acts towards the victim two months before the shooting were relevant on the issue of culpability and to rebut appellant's defense on the facts that he had no motive to shoot and kill Eaton.

Appellant also argues that the evidence was prejudicial and this quality far outweighed its probative value and should therefore have been excluded. The testimony given by the widow and her son who observed and participated in the events did portray appellant to have a tendency to be cruel. At the same time however, absent this testimony there was no understandable reason for appellant's alleged gross conduct. The absence of such a reason would have seriously weakened the case for the prosecution as it developed at trial. It was not therefore inadmissible on this basis.

The conviction is affirmed.

GIVAN, C. J., HUNTER, PRENTICE and PIVARNIK, JJ., concur.