**Tyrone N. CARTER, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 481S121.**

Supreme Court of Indiana.

Aug. 12, 1982.

Jeffry G. Price, Peru, for appellant.

Linley E. Pearson, Atty. Gen., Dan S. LaRue, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Tyrone N. Carter, was convicted at a bench trial of robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.), and was sentenced to a period of twelve years and six months with the Indiana Department of Correction. His direct appeal raises the following three issues:

1. Whether the trial court erred in admitting alleged hearsay evidence;

2. Whether the trial court's failure to advise defendant of his Ind.R.Crim.P. 11 rights immediately after sentencing resulted in harmful error; and

3. Whether the trial court erred in denying defendant's motion for new trial based upon allegedly newly discovered evidence.

A summary of the facts from the record most favorable to the state shows that an attendant in a gas station in Peru, Indiana, was robbed on the evening of August 11, 1979. The attendant, Walter Harris, testified that two black males drove up to the station in a brown automobile and asked for directions. One man went inside the station to use the phone, then came back out and said the phone wasn't working. Harris went inside the station with this man; then defendant came into the station, pointed a sawed-off shotgun at Harris and demanded the station's money. After Harris handed defendant $65, he was tied to a water pipe and was told not to tell anyone about the robbery. Harris identified defendant as one of the robbers both from photographs and at the trial.

Defendant put on several witnesses at trial in an effort to prove that he was not involved in the robbery but was at his girlfriend's home when the robbery occurred. He also presented evidence to support the theory that his brother, David Carter, Jr., was the one involved in the crime rather than himself. There was some evidence that David Carter and defendant were similar in appearance. However, the victim had identified defendant from a photographic array which included photographs of both David Carter and defendant. David Carter gave a sworn statement implicating defendant in the instant crime while he was being held in jail a few days after the robbery. The court admitted this statement only for the limited purpose of showing that a statement had been made since David did not testify at the trial.

### I.

Defendant first contends that the trial court erred in admitting the written statement made by his brother, David, which implicated him in the instant crime. The record shows that defendant, his brother David, and a third individual, Durwood Bundrandt, had worked together in several

robberies. Bundrandt testified at the trial that he was one of the men involved in the instant crime and that it was David and not defendant who was his accomplice on this occasion. During the rebuttal testimony, the state moved to admit the sworn statement David Carter had given to police a few days after the instant crime implicating defendant. Defendant objected on the basis that the statement was hearsay. However, the court specifically ruled:

"I will admit the statement, not for the truth or falsity of the contents of the statement, but only for the fact that a statement was made by David Carter."

 It is a well established legal principle in this state that if an out-of-court statement is offered into evidence only as proof of making the statement and not as proof of the matter asserted therein, the testimony as to the out-of-court declaration is not barred by the hearsay rule. *Roberts v. State*, (1978) 268 Ind. 348, 375 N.E.2d 215; *Bean v. State*, (1978) 267 Ind. 528, 371 N.E.2d 713; *Jethroe v. State*, (1974) 262 Ind. 505, 319 N.E.2d 133. In this case a police officer who had talked to all three men, defendant, David Carter, and Durwood Bundrandt, was questioned about Bundrandt's relationship with David Carter and his possible motives for testifying at the instant trial. The officer stated that David Carter had given statements against both the defendant and Bundrandt. The trial court then properly admitted David Carter's written statement only for the limited purpose of showing that a statement had been given and not to prove the truth of the contents of the statement. We find no error in the admission of the statement for the specified limited purpose.

### II.

 Defendant next contends that the trial court committed prejudicial error by failing to advise him of his Criminal Rule 11 rights at the sentencing hearing.[1] How-

---

1. Ind.R.Crim.P. 11 reads in pertinent part:

"Following the sentencing of such defendant, the judge shall immediately advise the defendant as follows:

ever, defendant has failed to show that he was in any way harmed by the court's oversight. Defendant filed his praecipe seven days after the sentencing hearing and his motion to correct errors within sixty days. His appeal was thus timely perfected. Furthermore, at the hearing on the motion to correct errors, the court advised defendant of his Criminal Rule 11 rights and gave him an extension of time in order to file a new motion to correct errors. Defendant lost none of his rights by reason of the court's initial failure to tell him what his rights were and has demonstrated no harm. *Wills v. State*, (1974) 162 Ind.App. 159, 318 N.E.2d 385. The trial court was extremely fair to defendant in extending the time to appeal.

### III.

Defendant finally contends that the trial court erred in refusing to grant him a new trial on the basis of newly discovered evidence. The newly discovered evidence consisted of a letter which David Carter sent to defendant's attorney after the trial which stated that defendant had not been involved in the instant crime.

When a new trial is requested based upon newly discovered evidence the moving party must show that the evidence meets several requirements including the fact that due diligence was used to discover it in time for trial, that it is worthy of credit, and that it will probably produce a different result upon a second trial. *Tessely v. State*, (1978) 267 Ind. 445, 370 N.E.2d 907. A motion for a new trial predicated on newly discovered evidence is viewed with disfavor, and the denial of the motion will be reversed only if the trial court abused its discretion in concluding that a different result upon retrial would not have been possible. *Helton v. State*, (1980) Ind., 402 N.E.2d 1263.

"(1) that he is entitled to file a motion to correct errors which must be done within sixty [60] days of the sentencing;
"(2) that he is entitled to take an appeal from the judgment, but if he wishes to do so, he must first file a timely motion to correct errors and he must file a praecipe designating what is to be included in the record of the

In this case, David Carter's letter completely contradicted his previously sworn statement which significantly diminished its credibility. Furthermore, defendant could have called David Carter as a witness at the time of the trial if he seriously doubted the credibility of David's original sworn statement. Finally, there was direct evidence from the victim of the robbery to implicate defendant in the instant crime. There was no error in denying a new trial in this case.

For all of the foregoing reasons, there was no reversible error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., concurs in result.

proceedings on appeal within thirty [30] days of the court's ruling on the Motion to Correct Errors or the right to appeal will be forfeited.
"(3) that if he is financially unable to employ an attorney, the court will appoint counsel for defendant at public expense for the purpose of filing the motion to correct errors and for taking an appeal."