Ronald JOHNSON, Michael Johnson, Gary Lingler, Appellants,

v.

**STATE of Indiana, Appellee.**

**No. 1282S500.**

Supreme Court of Indiana.

Jan. 11, 1985.

894

David P. Sexson, Stephen P. Sherron, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen. of Indiana, Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendants-Appellants Ronald Johnson, Michael Johnson, and Gary Lingler were jointly tried by a jury in the Morgan Superior Court. Michael Johnson was found guilty of attempt to commit the crime of murder, rape with a deadly weapon, criminal deviate conduct while armed with a deadly weapon, and criminal confinement while armed with a deadly weapon. He was sentenced to a term totalling ninety (90) years. Ronald Johnson was found guilty of attempt to commit the crime of murder, rape with a deadly weapon, criminal deviate conduct while armed with a deadly weapon, and criminal confinement while armed with a deadly weapon. He was sentenced to a term of one hundred and thirty (130) years. Gary Lingler was found guilty of the crimes of attempt to commit the crime of murder, rape with a deadly weapon, a second count of rape with a deadly weapon, criminal deviate conduct while armed with a deadly weapon, and criminal confinement while armed with a deadly weapon, and was further found to be an habitual offender. Lingler was sentenced to a term of two hundred (200) years.

The nineteen issues presented for our consideration in this direct appeal are as follows:

1. error of the trial court in overruling Defendants' motion to dismiss and Defendants' motion to suppress evidence;

2. permitting Officer Canal to testify to statements made by Officer Dine at the hearing on the motions to dismiss and suppress;

3. permitting identification testimony regarding Michael Johnson;

4. denial of a motion for mistrial concerning statements of Gary Lingler;

5. permitting testimony of statements by Gary Lingler;

6. denial of a motion for change of venue from the county;

7. denying Defendants' challenge for cause to two prospective jurors;

8. failure of the State to produce possible exculpatory evidence;

9. permitting Officer Canal to testify as to statements from Detective Deal;

10. admission of State's Exhibit 1 into evidence;

11. refusal of polygraph examination testimony;

12. admission into evidence of a composite drawing;

13. denial of Defendants' motion for jury to view the automobile used in the crime;

14. overruling of Defendants' objection to State's tendered final instruction No. 1;

15. error in the habitual offender proceedings of Defendant Lingler;

16. permitting testimony regarding threats of violence by defendants and concerning prior sexual acts of Ronald Johnson;

17. denial of Defendants' motion for change of judge for sentencing;

18. prosecutorial misconduct; and

19. improper sentencing.

The facts tend to show that on the evening of December 26, 1981, D.T. returned to her Greenwood, Indiana apartment after having been out with friends. As she got out of her car, a man approached her, grabbed her, and threatened her with a knife. D.T. was forced by the man with a knife into a vehicle in which two other men were seated. One of the other men threatened her with a gun.

She eventually was driven to a house not far from I–65 in Indianapolis. She was forced into a bedroom where each man forced her to engage in sexual activities against her will. All three men engaged in regular sexual intercourse and two of the men also performed anal intercourse upon her. The men then promised that they would not hurt her and forced her back into the car. They did not, however, drive her back to her apartment, but instead drove to the Henderson-Ford Bridge in Morgan County, where they bound her hands and threw her off the bridge into icy waters.

D.T. was able to free herself after hitting the water and eventually was able to struggle to shore. Before she pulled herself from the icy river, she waited until a car parked on the bridge left, afraid that it contained her assailants. She then dragged herself to the road and was able to flag down a passing car. She was taken to the sheriff's office and from there to a hospital for medical treatment. From a composite sketch she gave to the police, Officer Deal was able to identify Michael Johnson. On January 17, 1982, D.T. attended a lineup and identified Michael Johnson as one of the perpetrators. At trial she unequivocally identified Michael Johnson. From photographic displays D.T. further identified Gary Lingler and positively identified him at the trial. From a second lineup she selected Ronald Johnson as looking like the driver of the car, but she was not positive of this identification. D.T. was also able to identify Michael Johnson's house as appearing to be the house where she was raped, and made some identification of Ronald Johnson's automobile.

## I

Defendants claim the trial court erred by not granting their motions to dismiss and to suppress evidence, claiming that the affidavits for probable cause for the arrest and search warrants contained false allegations and material misrepresentations. The State contends the defendants have failed to establish that deliberate false allegations and material misrepresentations were made in the probable cause affidavits. It is the State's position that, at most, in the haste of preparation, negligent and innocent mistakes were made that would not amount to an adequate basis upon which the magistrate issued the warrants.

The State first properly points out that not all of the defendants may legitimately challenge the search warrant or the search of the house and vehicle. It is well settled that in cases involving Fourth Amendment search and seizure claims, the initial question which must be answered is whether the person who is aggrieved had any personal and legitimate expectation of privacy in the place searched. *Humes v. State*, (1981) Ind., 426 N.E.2d 379. A defendant has no constitutional right to challenge the search or seizure of another person's property. *Hope v. State*, (1982) Ind., 438 N.E.2d 273. This is so even if the search was without probable cause. *Pol-*

*lard v. State,* (1982) Ind.App., 439 N.E.2d 177, 183, *reh. denied.*

■ In the instant case, Defendants complain of the search of Michael Johnson's house and the search of Ronald Johnson's automobile. No evidence has been presented that Gary Lingler had any legitimate expectation of privacy in either the house or the car. Therefore, Defendant Lingler may not challenge the search warrant or the search of either the house or the car. *Hope, supra; Hume, supra; Pollard, supra.* The State makes a similar argument with respect to Michael and Ronald Johnson's automobile. The vehicle belonged to Ronald Johnson. There was no evidence that would permit a reasonable inference that Michael Johnson had a legitimate expectation of privacy in Ronald's automobile. Therefore, Michael Johnson may not challenge the search warrant or search of the car. However, there was evidence at trial that Ronald Johnson resided at 3323 South Rural with Michael Johnson. Thus, both Michael and Ronald Johnson may challenge the search warrant and the search of the house.

■ In order to sustain their claim that the affidavits for probable cause for the arrest and search warrants contained false allegations and material misrepresentations, and that without the improper material the warrants lacked probable cause, the burden was on the defendants to show that relevant matter as expressed in the affidavits was untrue. *Everroad v. State,* (1982) Ind., 442 N.E.2d 994, 1005, *reh. denied.* Allegations of negligence or innocent mistake are insufficient. *Franks v. Delaware,* (1978) 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667. The Court of Appeals stated the manner in which we review this issue in *Watt v. State,* (1980) Ind.App., 412 N.E.2d 90, 95, *reh. denied:*

"Nonetheless, once the State has obtained a magistrate's determination of probable cause, a presumption of validity obtains. *Franks, supra. See generally,* 2 J. Varon, Searches Seizures and Immunities 876 (1974). It is therefore incumbent upon the defendant to make some

showing that the facts stated were untrue or tainted by illegality, if the reasonable inferences to be derived from the common-sense reading of the affidavit are that no such falsehood or illegality exists. Reviewing courts, including the trial court on a motion to suppress, must pay substantial deference to the magistrate's determination of probable cause. *Aguilar v. Texas,* (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; *Riddle, supra.* Thus, it is entirely proper to require of one challenging the legality of a search, in order to suppress evidence, that he establish an invasion of his rights. *Jones v. United States,* (1960) 362 U.S. 257, 80 S.Ct. 725, 731, 4 L.Ed.2d 697."

The United States Supreme Court discussed this principle further in *Franks,* 438 U.S. at 164, 98 S.Ct. at 2681, 57 L.Ed.2d at 678.

"[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing' (emphasis in original). This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."

■ Officer Canal filed the affidavit used by the magistrate to issue the warrants here. In the affidavit Officer Canal indicated that he had information from Detective Teresa Deal that Ronald and Michael Johnson had perpetrated a prior rape very similar to the one under investigation. Deal gave Officer Canal the names of Ronald and Michael and their address. The affidavit did not state that anyone was convicted of the prior rape but only that Deal was familiar with two persons who

were believed to have perpetrated it. In truth, only Michael Johnson was charged with the prior rape and charges against him were subsequently dismissed. Appellants claim the affidavit implied that Michael and Ronald had actually perpetrated the prior rape although there was no strong evidence that this was true. The State claims the affidavit did not intend to convey all the affiant knew of the prior event and that during the haste of investigation of a serious crime by the police officer, some confusion was perhaps injected into the affidavits. The State claims, however, that deliberate misrepresentation was neither demonstrated nor intended. Officer Canal testified at the hearing that his information from Deal was that the Johnsons were suspects in the perpetration of the prior rape. This, of course, is demonstrated by the fact that Michael actually was charged though those charges were later dismissed. Due to the general nature of the statement in the affidavit regarding the prior rape and the involvement of the Johnsons in it, we agree with the State that the defendants have failed on this point to establish that the complained of statement in the affidavits was a deliberate falsehood or misrepresentation on a material point.

The United States Supreme Court in *Illinois v. Gates,* (1983) 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, (Brennan and Marshall dissenting) stated:

"We also have recognized that affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area.' (citation omitted) . . . The . . . complex super-structure of evidentiary and analytical rules that some have seen implicit in our *Spinelli* decision, cannot be reconciled with the fact that many warrants are-quite properly, ibid.—issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings. . . .

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed. (citation omitted)."

The test then is whether the totality of circumstances presented to the magistrate justified the issuance of the warrants. Clearly deliberate falsehood or misrepresentation by police officers making such affidavits will not be tolerated and cannot form the basis for the issuance of arrest or search warrants. Mistakes and inaccuracies of facts stated in the affidavit, however, will not vitiate the reliability of the affidavits by the magistrate so long as it is also determined that such mistakes were innocently made. In addition to the mistakes pointed out by defendants in the probable cause affidavits here, many substantial facts were stated in said affidavits that were true and did give the magistrate clear and substantial support for the issuance of warrants. In the affidavit reporting probable cause for the search warrant of the Johnson residence, Officer Canal stated that Detective Deal gave him the names of Michael and Ronald Johnson, and also gave the address of their home at 3323 South Rural Street. Detective Teresa Deal described the house and the description was very similar to that given by the victim. Detective Deal also corroborated a diagram of the layout of the house at that address as being accurate. Officer Canal then drove by the house and gave a description of it in his affidavit, which description matched that given by the victim in many respects. Officer Canal also stated in his affidavit that he talked to Greenwood police officer, Detective Bob Dine who told him that he, Dine, had talked to an informant whose credibility was known

by Dine to be reliable. This informant told Dine that Ronald and Michael Johnson of 3323 South Rural Street, Indianapolis, were two of three perpetrators. This informant also provided a perfect description of weapons used, a matching description of the house, and a description of the car that was used. All of this information was obtained by the informant from Michael Johnson himself. Officer Canal again drove past the dwelling and observed a 1975 Ford Thunderbird meeting the description given to him up to that point and noted the license plate. That license plate was registered under the name of the father of Michael and Ronald Johnson for another vehicle. It later developed that the informant to whom Dine had been referring and whose statement was included in Canal's affidavit was, in fact, defendant Lingler. It was, of course, not known by either of the officers at that time that Lingler actually was involved in the crime.

In addition to the above facts, the arrest warrant included the fact that a knife found at the residence of Michael Johnson was identified by the victim as "looking like" the knife used during the rape, although she did not say for sure that it was the same one. Gary Lingler was named at this time as an informant giving information about the Johnsons. The affidavit also stated that the victim had indentified Michael Johnson in a lineup as being one of her attackers and, in fact, as the one who put the knife to her throat in the parking lot when she first was abducted. There were other details given of statements by the victim that tended to further identify them.

■ In view of the facts in these affidavits indicating justification for the magistrate to find probable cause, Defendants' indication of mistakes pale in their importance and support of their claim of inadequacy. Defendants complain that the affidavits indicated Detective Deal had communicated to Officer Canal that a pistol was used in the prior rape and that in actuality Deal never gave Canal that information. They also claim there is no evidence a pistol

was used in the prior rape. However, they have not shown that Deal did not tell Canal that a gun was used. Deal also told Canal of knives used that matched descriptions of knives found in Michael Johnson's bedroom. Whatever the truth of the actual existence of a gun in the first rape, it cannot be said to be so material that it rendered the affidavits inadequate. There is no showing that there was purposeful misrepresentation made by Officer Canal when he stated it was his understanding there was a gun as well as knives at the first crime. As the State points out, it is not really certain or conclusive at this time that there was not such a gun and that Detective Deal did not tell Officer Canal that a gun was used in the prior rape.

■ Defendants further complain there was some discrepancy between the description of the Johnson residence given by the victim and the one stated by Canal as his observation. These are really matters of credibility. The descriptions of the residence were substantially similar and varied only in detail.

■ When Gary Lingler talked to Detective Dine and implicated the Johnsons in this crime, it was not known to Dine, nor to Canal, that Lingler was himself one of the perpetrators. After Lingler was arrested and charged, he denied ever making statements to Dine about this case and stated that the statements in the affidavits were totally false. Defendants now claim that because Lingler denied making such statements, the information used in the affidavits by Lingler's statements were untrue and, therefore, did not give reliable grounds for the finding of probable cause. This argument has no merit. The fact that Gary Lingler now denies making the statements merely raises the question of credibility and does not affect their reliability at the time they were attested to by Officer Canal. Dine testified under oath at the hearing that Gary Lingler did, in fact, make such statements and Officer Canal testified that he subsequently questioned Gary Lingler who corroborated to Canal all the facts that he had previously given to

Dine. Showing a conflict in the evidence now, by challenging Lingler's statements, does not establish that false allegations were made in the probable cause affidavits.

Defendants make complaint on several other allegations in the affidavits that are either questions of credibility of persons giving direct testimony or refer to inferences that may be drawn from the manner in which certain sentences were constructed. None of these instances go to material aspects of the very solid facts presented in the affidavits and none of them imply an intent by Officer Canal to purposely misrepresent facts.

The final claim made by defendants in this issue concerns information provided by affidavit by one Kathy Payne. Their complaint is that Payne's affidavit did not attest to her reliability and history of her credibility. As is apparent, however, the affidavit of Kathy Payne was based upon her personal observations and was not submitted by Canal as a hearsay statement causing him to come to factual conclusions. Furthermore, Payne's testimony was corroborated by the victim's identification of Gary Lingler's photograph.

We agree with the State that there is no showing of misrepresentation or purposeful misstatement of facts in the affidavits that brought about the issuance of the warrants here. The affidavits for probable cause were clearly sufficient to permit the trial court to determine probable cause for the search and arrest warrants. We, therefore, see no error on this issue.

## II

Defendants claim that during the hearing to suppress and dismiss, the trial court erred by permitting Officer Canal to testify to statements by Officer Dine claiming that such testimony was hearsay. The purpose of the hearing was to consider Defendants' motions to dismiss and suppress which were based upon claims that the police did not have probable cause to arrest Defendants or conduct searches of their property. Defendants challenged the factual basis of

the probable cause affidavits as we have indicated in Issue I above.

Officer Canal was the affiant in the probable cause affidavits. The testimony in question came about while the prosecutor was questioning Canal as to the source of certain information in the probable cause affidavits. The questions were for the purpose of establishing what information was relied upon by Officer Canal for the probable cause affidavits. Certain information relied upon by Canal was supplied by Officer Dine. Defendants objected to Canal testifying as to the information supplied to him by Dine, claiming it was hearsay. The State contends Canal's testimony was for the purpose of showing what information Canal relied upon in his affidavit and the information supplied to him which tended to establish the reliability of the informant, Gary Lingler, from whom Officer Dine obtained this information. Canal's testimony was not for the purpose of establishing the truth of Dine's information, but was to show the basis for the information in the probable cause affidavit. Because Canal's testimony of Dine's statements was not for the purpose of showing the truth of Dine's statements, the testimony was not inadmissible hearsay. *Carter v. State*, (1982) Ind., 438 N.E.2d 738, 740; *Head v. State*, (1982) Ind., 443 N.E.2d 44, 59. At the hearing, however, Officer Canal not only testified to the information supplied to him by Officer Dine as to Gary Lingler's statements but he also testified to Gary Lingler's corroboration of Officer Dine's information to him. This testimony was not objected to by defendants. It is well settled that the erroneous admission of evidence does not require reversal if other evidence having the same probative value is admitted without objection or contradiction. *Moody v. State*, (1983) Ind., 448 N.E.2d 660, 664. In view of the fact that the very purpose of the hearing was to determine the reliability of Officer Canal's affidavits in a quest for warrants, and further that the information was cumulative of information supplied to him by Gary Lingler, there was no reversible error in the admission of Canal's testimony con-

cerning Officer Dine's statements to him. Defendants have, therefore, failed to establish reversible error in the trial court's allowance of Officer Canal's testimony.

### III

 Defendants claim error in the trial court's actions permitting the victim's in-court identification of Michael Johnson and by permitting testimony of the lineup of Michael Johnson. One of Michael Johnson's principal arguments is that he was not afforded counsel at the lineup. The evidence clearly shows, however, that at the time of the lineup Michael Johnson had not been charged with the present crimes. He was being held on a possession of marijuana charge. He was, therefore, not entitled to counsel since the judicial adversary proceedings had not begun either by the filing of an affidavit or an indictment. *Young v. State*, (1979) 272 Ind. 1, 395 N.E.2d 772; *Head v. State, supra*. The fact that Michael Johnson was charged with an unrelated offense does not entitle him to counsel at a pre-indictment lineup on the present charge. *Bray v. State*, (1982) Ind., 443 N.E.2d 310, 314. Defendants further argue, however, that Michael Johnson requested an attorney at the time of the lineup. He stated at the hearing that on the day he was questioned by the police about the possession of marijuana charge, the same day as the lineup, that he had been advised of his right to counsel on three occasions. He indicated to the officers he knew his rights but he refused to sign the rights waiver forms. Officers Canal and Conner testified that Michael Johnson was advised of his rights at the time of the lineup and that he did not request an attorney. Since this was a fact in conflict, it was for the trial court to weigh and determine the credibility of the witnesses. We do not reweigh evidence concerning a factual matter at issue but consider that evidence which tends to support the trial court's ruling. *Thomas v. State*, (1983) Ind., 443 N.E.2d 1197, 1199; *Chandler v. State*, (1981) 275 Ind. 624, 419 N.E.2d 142, 147. The failure of an accused to sign a rights waiver is not dispositive of the issue of whether the accused waived his rights. *Powell v. State*, (1982) Ind., 437 N.E.2d 969, 970; *Cobb v. State*, (1980) 274 Ind. 342, 412 N.E.2d 728, *reh. denied*. There is, therefore, no showing of error by reason that Michael Johnson was not accompanied by counsel at the time of the lineup.

 Defendants further claim error in the admission of the testimony of the lineup based on the fact that the victim may have seen Michael Johnson at the jail shortly before the lineup. Defendants argue that this viewing by the victim would render the lineup impermissibly suggestive. Canal testified, however, that he had the victim enter the restroom while Johnson was being brought in for the lineup so that she could not see him. He said there was a possibility that the victim had seen Defendant when he drove up to the jail, but it was his opinion she did not. At trial the victim testified she did not see anyone in the car and that Officer Canal had her go into the restroom and wait until after he brought the person in for the lineup. She did not see Michael Johnson prior to the lineup. There is, therefore, no showing that the police in any manner contrived a situation where the witness would be permitted to see the suspect before the lineup. In fact, it appears the police deliberately attempted to prevent, and did prevent, such an encounter. *Seaton v. State*, (1983) Ind., 445 N.E.2d 105; *Robertson v. State*, (1981) Ind., 429 N.E.2d 258.

 Defendants further claim the lineup was impermissibly suggestive because the lineup participants were required to state the crime with which they were charged. The testimony showed that at the time Michael Johnson was in the lineup he was charged with possession of marijuana. He was not charged with attempted murder and rape and he did not make such statements. Furthermore, the victim stated she did not understand what Michael said when he made the statement. This did not make the lineup impermissibly suggestive nor inadmissible at trial. *Cobb, supra*.

**904**

Defendants contend that testimony should have been excluded because the police kept no record, such as photographs, videotape, or audiotape of the lineup. Defendants, however, do not cite us to any authority in support of their contention that a record of the lineup must be preserved. Any claim of error therefore is waived. *Wickliffe v. State*, (1981) Ind., 424 N.E.2d 1007, 1010.

In order to show that the testimony regarding the lineup was inadmissible it was the burden of Defendants to show that it was so impermissibly suggestive that it produced a substantial likelihood of misidentification at trial. *Lane v. State*, (1983) Ind., 445 N.E.2d 965, 967. As we have indicated there is no showing here that the lineup was impermissibly suggestive that it produced a substantial likelihood of misidentification at trial. *Lane v. State*, (1983) Ind., 445 N.E.2d 965, 967. As we have indicated, there is no showing here that the lineup was impermissibly suggestive. It is very apparent that the victim had a sufficient basis for her in-court identification of Michael Johnson independent of the pretrial lineup. She testified that she was in the presence of defendant Michael Johnson for a period of some three hours in which she had very close contact with him and was able to observe him at length. Her independent basis for the in-court identification was sufficiently established without reference to the pretrial lineup, whether or not the lineup was impermissibly suggestive. *White v. State*, (1982) Ind., 433 N.E.2d 761; *Hill v. State*, (1982) Ind., 442 N.E.2d 1049; *Evey v. State*, (1981) 275 Ind. 674, 419 N.E.2d 971. Accordingly, Defendant has shown no error on this issue.

### IV & V

Defendants claim the trial court erred by overruling Defendants' motion for mistrial concerning statements by Gary Lingler. The trial court on three different occasions denied motions for mistrial when reference was made to defendant Lingler's statements based on the fact that they were in violation of a defense motion *in limine*.

The oral motion *in limine* was based only upon a claim that Gary Lingler's statements to the police were not voluntarily made. Defendants Ronald and Michael Johnson claim any testimony of Lingler's statement was inadmissible pursuant to *Bruton v. United States*, (1968) 391 U.S. 123, 124, 88 S.Ct. 1620, 1621, 20 L.Ed.2d 476, which was concerned with the admission into evidence of an accomplice's statement when that accomplice does not testify at trial.

Defendants moved for a mistrial during the prosecutor's opening statement in which he referred to a "snitch" who had provided information to Sgt. Dine. The prosecutor did not state who had provided this information. The defendant objected, stating: "I'm going to object to this as being something that we discussed under our motion." This objection did not refer to any specific motion by Defendants and, thus, is not sufficiently specific to present any alleged error for appellate review. *Wells v. State*, (1982) Ind., 441 N.E.2d 458, 463, *reh. denied; Brown v. State*, (1981) 275 Ind. 441, 417 N.E.2d 333. Although Defendants argue the court denied a motion for mistrial, the record does not indicate that Defendants made any motion for mistrial. Neither does the record show that Defendants requested an admonishment or any other curative action. The record shows, however, the trial court did promptly admonish the jury to disregard the statement by the prosecutor. A prompt admonishment is generally sufficient to cure an alleged error and protect a defendant's rights. *Johnson v. State*, (1982) Ind., 435 N.E.2d 242, 247; *Ward v. State*, (1982) Ind., 438 N.E.2d 966. Defendants did not object to the trial court's admonishment nor did they request any other curative action. They, therefore, present no error to us on this issue. *Lambert v. State*, (1983) Ind., 448 N.E.2d 288, 291; *Barnes v. State*, (1982) Ind., 435 N.E.2d 235, 238.

Defendants further claim error regarding Lingler's statement when Officer Canal was testifying about his conversation

with witness Payne. Canal testified Payne told him Lingler was relating to her an incident in which he raped a girl and tied her up and threw her off a bridge. During his testimony Canal referred to Payne as speaking of "them" and "they." The defendant then objected, stating, "... this was the type of situation we had discussed previously." Defendants moved for a mistrial and the trial court denied the motion. Defendants then requested the court to admonish the jury that the testimony applied only to Gary Lingler. The trial court did grant this request and admonished the jury. It is apparent that Officer Canal's testimony regarding Payne's statements did not refer in any way to Ronald Johnson or Michael Johnson. In further questioning witness Canal, the prosecutor made it clear that Kathy Payne's statement implicated only Gary Lingler and no indication was given that anyone else was with him when he raped the girl and threw her off the bridge. The State, therefore, asserts that the statement referred to in Officer Canal's testimony was sufficiently redacted and that no violation of *Bruton* occurred. We agree. Kathy Payne's statement as to defendant Lingler did not incriminate any person or persons other than Lingler. The trial court, therefore, did not err in denying the motion for mistrial on these grounds. *Gutierrez v. State*, (1979) 271 Ind. 639, 395 N.E.2d 218, 221; *See Williams v. State*, (1978) 269 Ind. 193, 379 N.E.2d 449.

■ The third claim of error with reference to motions for mistrial concerned testimony given by Kathy Payne when she took the stand. She testified that she talked to Gary Lingler on January 6, 1982. On cross-examination by defense counsel, she was asked how she remembered that date. She then referred to the fact that "they" had returned from California on that day or the next, and by reference to that incident she could remember the date. Defendants again claim that "they" obviously referred to the Johnson brothers and, therefore, a *Bruton* violation occurred. Again, however, there was no reference whatever to Ronald or Michael Johnson in the testimony. Witness Payne did not testify as to who went to California and who returned. The fact that the jury might have presumed that "they" referred to Ronald and Michael was purely speculative as no reference was ever made or implication given by Payne's testimony. *Gutierrez, supra; Williams, supra.* Furthermore, as the State points out, when Kathy Payne testified to the statement of Gary Lingler, Defendants made no objection. Therefore, even if the objectionable testimony was erroneously admitted, the error was harmless for it was cumulative of evidence admitted without objection. *Locke v. State*, (1984) Ind., 461 N.E.2d 1090, 1091, *reh. denied.* No error is presented in the denial of Defendants' motions for mistrial.

■ Defendants Johnson urged that Lingler's statement was a *Bruton* violation and should have been excluded. As we already have pointed out, however, where the statement of one non-testifying defendant is sufficiently redacted to effectively shield the other non-testifying defendants from incrimination by the confessor's statement, *Bruton* is not violated. *Gutierrez, supra; Williams, supra; Jenkins v. State*, (1980) 274 Ind. 140, 409 N.E.2d 591, 593. Here, there was no reference to Ronald and Michael Johnson in the testimony of either Payne or Canal. There was no indication that Lingler had indicated how many people assisted him or that anyone assisted him in the perpetration of the crime. There was no fact from which the jury could even have inferred that Ronald or Michael Johnson, or both of them, were subjects of his testimony. Furthermore, Kathy Payne testified as to Gary Lingler's statement without objection by Defendants either on grounds raised here or any other grounds. Therefore, any allegations of error concerning the admission of this statement have been waived. *Smith v. State*, (1983) Ind., 443 N.E.2d 1187, 1190; *Lagenour v. State*, (1978) 268 Ind. 441, 376 N.E.2d 475; *Ballard v. State*, (1974) 262 Ind. 482, 318 N.E.2d 798.

## VI

■ Defendants claim the trial court erred in not granting them a change of

venue from the county due to the fact that pervasive media coverage of the case prevented the selection of an impartial jury in Morgan County.

The record shows the only pretrial motion for change of venue made was that by Ronald Johnson. This motion was filed February 16, 1982, before the three causes were consolidated for trial. No motion for change of venue from the county was made by the other two defendants. Defendant Ronald Johnson entered a plea of not guilty on January 28, 1982. The motion for change of venue filed on February 16, 1982, was several days beyond the required ten days after pleading required under Ind. R.Crim.P. 12. The State pointed this out in its response to the motion. Ronald Johnson's motion did not state when the cause for the motion was first discovered, how it was discovered, nor why it could not have been discovered before. Defendant's arguments seem to be based on the contention that they had a right to an automatic change of venue pursuant to Ind.R.Crim.P. 12. As demonstrated by the facts set out above, this was not true. Since Defendants' motion did not follow the clear dictates of Ind.R.Crim.P. 12, the trial court was justified in denying defendant Ronald Johnson's motion for change of venue from the county. *Carroll v. State*, (1982) Ind., 438 N.E.2d 745; *Petruso v. State*, (1982) Ind., 441 N.E.2d 446.

After voir dire of the jury, Defendants merely renewed their motion for change of venue from the county. Defendants refer to a hearing held on February 25, 1982, but do not furnish nor even cite us to any transcript of that hearing. Defendants claim on appeal that several newspaper articles were introduced at the hearing on the motion, but this is not substantiated by the record. Defendants' failure to provide a record which permits proper review of the alleged error constitutes a waiver of the issue. *Grooms v. State*, (1978) 269 Ind. 212, 379 N.E.2d 458, *cert. denied* (1979) 439 U.S. 1131, 99 S.Ct. 1053, 59 L.Ed.2d 93.

Defendants claim error in the denial of change of venue based on the fact that a large number of prospective jurors had heard of the case due to media accounts, and also claim an unusually high number of prospective jurors had preconceived opinions of Defendants' guilt. Defendants do not claim that the media accounts were sensationalized or more than factual accounts. The State properly points out that defendants bear the burden of showing that local prejudice entitled them to a change of venue and that an impartial jury would be impossible because of the high probability of existence of widespread community bias. *Robinson v. State*, (1983) Ind., 446 N.E.2d 1287; *Drollinger v. State*, (1980) 274 Ind. 5, 408 N.E.2d 1228. It was incumbent upon defendants to establish that the potential jurors were unable to set aside their preconceived notions of guilt and to render a verdict based on the evidence. Even if potential jurors had been exposed to pretrial publicity concerning the defendants' case, that alone is insufficient to establish prejudice unless it is also demonstrated that the jurors were unable to set aside any preconceived notions they may have had. *Walker v. State*, (1983) Ind., 444 N.E.2d 842; *Sage v. State*, (1981) 275 Ind. 699, 419 N.E.2d 1286; *Willard v. State*, (1980) 272 Ind. 589, 400 N.E.2d 151; *Drollinger, supra.*

Defendants do not show that those jurors who did serve were unable to set aside any preconceived opinion they may have had. The record does show that the jurors examined on *voir dire* stated they could fairly and impartially consider the evidence and render a decision based upon the evidence. Defendants, therefore, have failed to establish reversible error in the trial court's denial of their motions for change of venue from the county.

### VII

Defendants claim the trial court erred in denying their challenge for cause to two prospective jurors. The record clearly shows that defendants had not dem-

onstrated that their peremptory challenges were exhausted. It is well settled that the overruling of a challenge for cause, if error at all, is harmless error if a defendant fails to exhaust his peremptory challenges. *Hopkins v. State*, (1981) Ind., 429 N.E.2d 631; *Shelby v. State*, (1981) Ind., 428 N.E.2d 1241; *Foresta v. State*, (1980) 274 Ind. 658, 413 N.E.2d 889; *Morse v. State*, (1980) 274 Ind. 652, 413 N.E.2d 885, *reh. denied.* Moreover, the record shows that the two jurors defendants challenged were not members of the jury that tried them. Defendants, therefore, failed to show error on this issue.

### VIII

▮ Defendants argue the State failed to produce possible exculpatory evidence. The thrust of Defendants' argument is that due to sloppy police work they failed to further investigate certain areas which might have uncovered exculpatory evidence in favor of these defendants. It is true that the negligent destruction or withholding of material evidence by the police or prosecution may present grounds for reversal. *Wilson v. State*, (1982) Ind., 432 N.E.2d 30. However, the defendants do not complain here that they were not provided with testimony of witnesses or exhibits, such as photographs, in the hands of police or the prosecution. Their claim is that had additional police work been done, exculpatory evidence might have been discovered. One of the incidents complained of by Defendants concerned the size of the bed in Michael Johnson's bedroom where the rapes had occurred. The victim testified it was a double bed and there was testimony from police witnesses that it was either a double or a twin bed. There were police photographs of the area that were put into evidence. Defendants' claim was that it was a king size bed and they furnished photographs to demonstrate this. Defendants claim that had the police actually measured the bed this issue would have been put to rest. We fail to see how this raises a question of suppression of exculpatory evidence. The question of the size of the bed was a point in conflict testified to by all parties before the jury. Defendants do not point in what way this would have been exculpatory except to imply that the credibility of the victim and the police witnesses might have been questioned by this mistake. The State presented photographs of the bed found in the room at the time it was searched. Defendants presented their own photographs of the bed. There is no showing that the State violated any discovery order or withheld any exculpatory information in this regard. There is no merit to this contention.

The same can be said of Defendants' contention regarding evidence of a black light in Michael Johnson's automobile. One witness, Deborah Hickey, testified that there was a black light in Michael Johnson's automobile and there was some implication the light had been removed or destroyed by the Johnson family. Defendants now claim that when the officers came on the scene to search the premises and automobile, pursuant to the search warrant, Michael Johnson's Gremlin automobile was there and had they examined it closely they might have found the black light in that automobile. The police did not testify to examining any Gremlin automobile on that date and, furthermore, did not testify at all concerning a black light. Defendants do not argue that exculpatory evidence concerning a black light was observed by a police officer and withheld, rather they argue that had the police investigated further, they might have found evidence of a black light that could have been exculpatory. The same is true of Defendants' argument regarding tests run on semen smears found on the medical examination of the victim following the rape. Defendants again assert that tests are possible that can exclude a certain person but no such tests were taken by the State. Again, Defendants claim that had such test been taken it might have disclosed that one or any of these Defendants were not the source of such semen. Whatever the merit of Defendants' argument regarding the police search for the black light or the further

testing of the semen deposits, they do not represent the withholding of exculpatory evidence. The trier of fact heard all of the evidence, including these items, and had before them the credibility and significance of all of the evidence. Defendants do not show that any evidence regarding the black light or the semen test were present, that they were exculpatory, and that they were purposely withheld by the State. There is, therefore, no error presented to us on this issue.

## IX

Defendants claim the trial court granted a defense motion *in limine* regarding testimony of statements from Detective Deal and that this motion was violated during the testimony of Officer Canal. It is well settled that it is not the purpose of a motion *in limine* to obtain a final ruling on the admissibility of evidence. *Lagenour v. State*, (1978) 268 Ind. 441, 376 N.E.2d 475. To preserve error an objection must be properly raised at trial when the evidence sought to be excluded is introduced. *Jarvis v. State*, (1982) Ind., 441 N.E.2d 1; *Jones v. State*, (1981) Ind., 425 N.E.2d 128. Officer Canal testified to information obtained from Detective Deal without objection from these defendants. At another point, Officer Canal testified regarding some information from Detective Deal and Defendants objected only as to the relevancy and materiality of his testimony and did not raise the question of the violation of the motion *in limine*. The State, therefore, is correct in its assertion that the objection by the defendant was not sufficiently specific to preserve any error, especially the error now urged on this appeal. *Wells v. State*, (1982) Ind., 441 N.E.2d 458 *reh. denied; Thomas v. State*, (1982) Ind., 436 N.E.2d 1109, 1112 *reh. denied; Brown v. State*, (1981) 275 Ind. 441, 417 N.E.2d 333. Any error on this issue has accordingly been waived.

## X

Defendants now argue that the trial court erred in admitting into evidence State's Exhibit 1 which was a map depicting an area including parts of Marion, Johnson, and Morgan Counties. The area depicted in the map was that area described by the victim's testimony. Defendants do not claim that this exhibit is inaccurate or that it is irrelevant. Their only claim is that it does not show enough of the surrounding area and therefore is too limiting to the jury. The State's position is that as the Exhibit is relevant and accurately depicts the area shown, it was properly admitted into evidence. We agree. *Brown v. State, supra; Jenkins v. State*, (1975) 263 Ind. 589, 335 N.E.2d 215. There is no showing, nor do Defendants contend that by showing this particular area in the exhibit, some false impression was given of the facts of this occurrence. Their only argument is that there were other areas they would wish to have had included. Defendants were free to supply the jury with a map of their own depicting the areas they believe should have been included, and it would have been admissible for the same reason that State's Exhibit 1 was admissible. The trial court did not err in its ruling admitting State's Exhibit 1.

## XI

Defendants argue the trial court erred when it excluded testimony or reference to a polygraph examination taken by the victim. It is well settled in Indiana that a polygraph examination is not admissible into evidence unless there is a stipulation or waiver made by all the parties. *Dean v. State*, (1982) Ind., 433 N.E.2d 1172; *Kimmel v. State*, (1981) 275 Ind. 575, 418 N.E.2d 1152, *cert. denied* (1981) 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239; *Pavone v. State*, (1980) 273 Ind. 162, 402 N.E.2d 976, *reh. denied*. Defendants concede the law is as we have stated regarding polygraph examinations but suggest this Court should reconsider its stance on polygraphs because alleged exculpatory evidence may be presented by a polygraph from an individual other than a defendant. This Court has recently declined an invitation to reconsider the law on polygraphs. *Minneman*

*v. State,* (1982) Ind., 441 N.E.2d 673, 678 cert. denied (1983) 461 U.S. 933, 103 S.Ct. 2099, 77 L.Ed.2d 307. We again here decline to consider it and find such evidence inadmissible.

### XII

The trial court admitted into evidence a composite drawing submitted by the State which was made by the victim and depicted the features of Michael Johnson. Defendants' objection to such exhibit was that it was the product of a hypnotically refreshed memory and therefore should have been excluded from evidence.

 It is true that evidence derived from a witness which is the product of a hypnotic trance is considered inherently unreliable and, therefore, is not to be admitted into evidence. *Strong v. State,* (1982) Ind., 435 N.E.2d 969, *reh. denied.* The evidence shows there was an attempt to hypnotize the victim but such attempts were unsuccessful. The examiner was never able to put the victim in a hypnotic trance and no suggestions were made to her that normally are made to persons in a hypnotic trance to attempt to revive their memories. This composite drawing was made after such attempts. The victim's description of her assailant, which she related to Officer Neve following the cessation of attempts at hypnosis, was not significantly different from the descriptions she had previously provided to Officer Canal. Officer Canal observed that no new information was gained from the victim during the hypnosis attempts. Under these circumstances it was not error to admit the exhibit for it was not the product of hypnotic suggestion. *Strong, supra; Peterson v. State,* (1983) Ind., 448 N.E.2d 673; *Pearson v. State,* (1982) Ind., 441 N.E.2d 468.

### XIII

 During trial Defendants requested the trial court permit the jury to view the automobile allegedly used in the crime. The motion was denied. Defendants contend they had a right to have the jury view the automobile pursuant to Ind. Code § 34–1–21–3, which makes it permissible for the jury to view property. It is well settled, however, that a jury's view of a place relevant to the crime charged is not essential to a fair trial and is wholly within the discretion of the trial court. *Carroll v. State,* (1982) Ind., 438 N.E.2d 745, 749; *See Richard v. State,* (1974) 262 Ind. 543, 319 N.E.2d 118, *reh. denied.* A jury's view of a place is not intended as evidence, but is simply to aid the jury in understanding the evidence. *Carroll, supra; Snyder v. State,* (1979) 182 Ind.App. 24, 393 N.E.2d 802, *trans. denied.* Defendants did not show that the testimony from both sides regarding the description and photographs of Ronald Johnson's vehicle were inadequate to present its appearance. They also fail to show that the vehicle is in the same state at the present time as it was at the time of the crime. They therefore do not show that a view of the vehicle would have materially assisted the jury. As a result, they have presented no error in the denial of the motion. *Carroll, supra; Snyder, supra.*

### XIV

Defendants objected to State's tendered final instruction No. 1 and claim on appeal that the giving of such instruction to the jury was reversible error. They argue that this instruction was tendered only to arouse the jury into protecting society and was inflammatory.

 The record shows that at trial Defendants' only objection to this instruction was that it was repetitious for it was covered by another instruction, namely, instruction No. 23. It was not presented to the trial court by Defendants' objection that the tendered instruction was inflammatory and tendered only to arouse the jurors into protecting society. Because Defendants' argument on appeal is not consistent with the objection at trial, the alleged error has been waived. Appellant may not state one reason for objecting at trial and then rely upon a different objec-

tion on appeal. *Hernandez v. State*, (1982) Ind., 439 N.E.2d 625; *Phelan v. State*, (1980) 273 Ind. 542, 406 N.E.2d 237.

## XV

Defendant Lingler claims the trial court erred in regard to the habitual offender proceeding against him. He first claims the trial court erred in overruling his objection to admission of certain exhibits from Hamilton County and, second, claims the trial court improperly denied his motion for directed verdict at the close of all the evidence.

■ Defendant's argument on appeal regarding the exhibits from Hamilton County is that State's Exhibit No. 6 should not have been admitted into evidence because the prosecution had not sufficiently connected the exhibit to Defendant Lingler. The objection made at trial, however, was that there was no certification on the first page of said documents from Hamilton County, certifying that the first page was an accurate representation and a true and accurate copy of an official record. Defendant, therefore, objected that no foundation had been laid for the introduction of the exhibit. It is well settled that a party cannot add to or change his grounds for objection on appeal; any grounds not raised at trial are not available on appeal. *Davidson v. State*, (1982) Ind., 442 N.E.2d 1076; *Carman v. State*, (1979) 272 Ind. 76, 396 N.E.2d 344. Since Defendant Lingler raised one ground of error at trial which he does not raise here, and argues a different ground of error on appeal than raised at trial, he has waived any alleged error concerning Exhibit No. 6 for purposes of this appeal. *Davidson, supra; Carman, supra; Petruso v. State*, (1982) Ind., 441 N.E.2d 446.

■ Defendant Lingler further argues the trial court erred in denying his motion for directed verdict with regard to the habitual offender stage of the trial at the close of all the evidence. Lingler claims that at that stage of the proceeding the State had the burden to overcome the motion for directed verdict by proof beyond a reasonable doubt, and since the State had not done so, Lingler had a right to a directed verdict. We have only defendant Lingler's statement that this is so, and he cites to us no authority in support of his argument. Thus, this alleged error has also been waived. *Wickliffe v. State*, (1981) Ind., 424 N.E.2d 1007.

## XVI

Appellants claim the trial court erred by admitting into evidence testimony regarding threats of violence by Defendant Ronald Johnson and testimony concerning prior sexual acts of Ronald Johnson.

■ Several witnesses testified that Ronald Johnson had threatened to kill the victim of the crime, several witnesses, and the prosecuting attorney. Bailey Estep testified Ronald Johnson had made such threats. Threats by the accused against witnesses for the prosecution and the prosecutor are relevant and admissible into evidence. Such threats are viewed as admissions of guilt and therefore are relevant to demonstrate an accused's guilty knowledge. Threats are considered attempts to conceal or suppress implicating evidence and have been admitted. *Washington v. State*, (1980) 273 Ind. 156, 402 N.E.2d 1244; *Stanley v. State*, (1982) Ind.App., 435 N.E.2d 54; *Cox v. State*, (1981) Ind.App., 422 N.E.2d 357, *trans. denied.* Defendants did not object to the testimony of witness Estep, thus, any error regarding his testimony was waived. *Smith v. State*, (1983) Ind., 443 N.E.2d 1187. Other witnesses also testified as to threats made by Ronald Johnson, but Defendants either failed to object or raised general objections that the material was outside of the scope of prior examination or that it was immaterial and irrelevant. General objections such as irrelevancy preserve nothing for appellate review. *Thomas v. State*, (1982) Ind., 436 N.E.2d 1109, 1112; *Wells v. State*, (1982) Ind., 441 N.E.2d 458, *reh. denied; Brown v. State*, (1981) 275 Ind. 441, 417 N.E.2d 333.

■ One of the charges against Ronald Johnson was that he committed criminal sexual deviate conduct upon D.T., namely, that he forced her to engage in anal intercourse. The State called Deborah Hickey and Kathy Payne as rebuttal witnesses to testify that Ronald Johnson had proclivities toward engaging in anal intercourse. Appellants claim the trial court erred in admission of this evidence.

The record shows that again Defendant made only general objections to this testimony claiming it was irrelevant and immaterial. This does not present an issue on appeal as no specific objection was made at trial. *Brown, supra; Thomas, supra; Wells, supra.* The State further contends the act of criminal deviate behavior charged in the present case, anal intercourse, falls squarely within the exception for depraved sexual instinct. *Best v. State,* (1982) Ind.App., 439 N.E.2d 1361. *Best* held the exception is applicable in cases involving sodomy. Anal intercourse falls within the definition of sodomy. It appears, therefore, that other similar acts of sodomy, in this case anal intercourse, would be admissible under the depraved sexual instinct exception. *Woods v. State,* (1968) 250 Ind. 132, 235 N.E.2d 479; *Best, supra.* It would appear, therefore, that the questioning of Hickey, Payne, and defendant Ronald Johnson concerning prior acts of anal intercourse was not only relevant, but was properly admitted into evidence.

## XVII

■ It is Defendants' contention the trial court erred in denying Defendants' motion for change of judge for sentencing purposes only.

It is well settled that there is no right to a change of judge for the sentencing phase of the proceedings. Ind.R.Crim.P. 12.

■ Defendants claim remarks made by the trial judge to the jurors after returning their verdicts and before sentencing showed prejudice in the judge that required him to remove himself for sentencing purposes. The Judge's remarks were as follows:

"THE COURT: Ladies and gentlemen, I think your verdicts in this case reflect a decisive and courageous response to horrible events which initiated these criminal charges as presented in this courtroom. As jurors, and even more importantly, as citizens of this county, you have sent forth a message to any who would be watching that our people will not tolerate the criminal misconduct evidenced in these cases. And I sincerely thank you for that. For your patience, for your understanding and for your cooperation, I also extend my sincere thanks."

In view of the trial judge's attitude as demonstrated by his statement to the jury, Defendants claim he abused his discretion by not removing himself and having a special judge pronounce sentence. The burden is on defendants to show such an abuse of discretion. *Rogers v. State,* (1981) 275 Ind. 102, 415 N.E.2d 57. In *Yager v. State,* (1982) Ind., 437 N.E.2d 454, *reh. denied,* this Court held that where Defendant made a similar charge and received the minimum sentence he could have received under each conviction, that even if the judge did harbor prejudice and bias toward him, the prejudice was not such as to deprive defendant of a right to be tried before an impartial judge and require the judge to recuse himself.

Although Defendants did receive lengthy sentences, the trial judge fully stated his reasons for the sentences given and those reasons are clearly proper and justified pursuant to Ind.Code § 35–4.1–4–7 [§ 35–50–1A–7 (Burns 1979)] [repealed effective September 1, 1983; replaced by § 35–38–1–7 (Burns Supp.1984)]. There were clearly facts shown in the evidence, heard by the trial judge as well as the jury, justifying a finding that the acts committed by these defendants warranted sentences in excess of the minimums provided by law. The statutes give responsibility and authority to the trial judge to fix sentences consistent with the heinousness of the crime and the character of the perpetrator. We therefore do not find the trial judge abused

his discretion in denying Defendants' motion for change of judge for sentencing purposes.

## XVIII

[53] Defendants claim they should have been granted a new trial due to several instances of prosecutorial misconduct. Defendants' first claim of such misconduct concerns alleged references by the prosecutor in her opening statement to statements made by one of the defendants which Defendants claim was the subject of a motion *in limine*. The record shows, however, that after Defendants' objection, the trial court promptly admonished the jury to disregard the prosecutor's statement. Generally an admonition is deemed to cure an alleged error. *Ward v. State*, (1982) Ind., 438 N.E.2d 966; *Johnson v. State*, (1982) Ind., 435 N.E.2d 242. Furthermore, Defendants did not request any other curative action nor did they raise any further objection. *Barnes v. State*, (1982) Ind., 435 N.E.2d 235.

Defendants further claim that the testimony of Deborah Hickey, to the extent that Michael and Ronald Johnson's parents had asked her to lie, was new evidence which was not disclosed to them by the prosecutor. However, they failed to object or raise any motion to strike or for continuance as to said evidence, so they waived any issue there might have been in this claim of error. *Johnson v. State*, (1982) Ind., 436 N.E.2d 796.

Defendants claim prosecutorial misconduct with regard to the following prosecutorial acts: bringing in Deborah Hickey as a witness after Michael and Ronald Johnson's parents had asked her to lie, referring in closing argument to police officers testifying that the bed was a double bed and not a king size bed, referring to Ronald Johnson as a certified lunatic in closing argument, arguing to the jury that the father of the Johnsons had destroyed evidence and had lied, commenting about alibi defenses, and making statements to the news media following trial but before sentencing. Defendants either made no objec-

tion at trial to these instances, or raised only general objections as to relevancy, or objected on grounds that the testimony was outside the scope of rebuttal, or claimed the testimony was hearsay. As we already have indicated, grounds for objection must be properly raised at trial to be argued on appeal and an accused may not add to or change the grounds for objection in this Court. *Davidson v. State*, (1982) Ind., 442 N.E.2d 1076; *Carman v. State*, (1979) 272 Ind. 76, 396 N.E.2d 344. Furthermore, most of the instances pointed out by Defendant are proper comments on the evidence. Police officers testified that there was a double bed in Michael Johnson's room. Although there was conflict in this evidence, because defense witnesses testified the bed was a king size, comment on the testimony of the officers by the prosecutor was not improper. The same is true of the conflict in the evidence given by Deborah Hickey's testimony. Defendants must establish they were harmed by alleged error. *Murray v. State*, (1982) Ind., 442 N.E.2d 1012; *Smith v. State*, Ind., 432 N.E.2d 1363. There is no showing of any error in the trial court's ruling concerning the prosecutor's conduct or comments.

## XIX

Finally, Defendants claim the sentences given by the trial court constitute cruel and unusual punishment. They claim the sentences imposed were cruel and unusual and violated principles of double jeopardy. They cite no authority to support their claims of cruel and unusual punishment nor of double jeopardy; therefore, they have waived any error in this regard. *Guardiola v. State* (1978) 268 Ind. 404, 375 N.E.2d 1105. Defendants base their claim on the contention that the increasing of their sentences for aggravating factors and the imposition of consecutive sentences, together with enhancement for the habitual criminal finding in the case of Gary Lingler, constituted cruel and unusual punishment. They do not attack the statutes imposing such penalties but merely their application. We previously wrote on this

issue in *Hollars v. State*, (1972) 259 Ind. 229, 236, 286 N.E.2d 166, 170 (emphasis added):

"Generally, the constitutional prohibitions against cruel and unusual punishments, however, are proscriptive of atrocious or obsolete punishments and are aimed at *the kind and form of the punishment, rather than the duration and amount. Hobbs v. State* (1892), 133 Ind. 404, 32 N.E. 1019; 18 L.R.A. 774; *Kistler v. State*, (1920) 190 Ind. 149, 129 N.E. 625; *Badders v. United States* (1916), 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706. *These are primarily legislative considerations, and we are not at liberty to set aside a conviction and sentence because, on the record, they seem severe. Blue v. State* (1946), 224 Ind. 394, 67 N.E.2d 377; *Mellot v. State* (1942), 219 Ind. 646, 40 N.E.2d 655.

It is only when a criminal penalty is not graduated and proportioned to the nature of an offense, or where it is grossly and unquestionably excessive that this provision of the Constitution is intended to apply. *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793. Such is not the case here.

The law imposes upon us duties that are often painful of execution. There are areas wherein we have great powers and discretion, others where we have none, and we have not been invested with the authority to reverse judgments of the lower court out of considerations urged in this appeal."

Since it appears the trial court did comply with the applicable statutes and gave reasons for the sentences imposed, no question is raised with regard to cruel and unusual punishment, nor of double jeopardy.

The record shows the trial court gave sentences to all three defendants within the applicable statutes and gave reasons for instances where those sentences were increased based on aggravating circumstances. In the case of Michael Johnson, the trial court found, pursuant to Ind.Code § 35–4.1–4–7, that a mitigating circumstance was that defendant Johnson had no history of delinquency or criminal activity, and apparently had led a law abiding life for a substantial period of time before commission of this crime. The court further found the following aggravating circumstances: the defendant is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal institution, any imposition of reduced sentence or the suspension of the sentence and imposition of probation would depreciate the seriousness of the crime particularly in light of the nature of the offense and the manner in which the crimes were committed. The final aggravating circumstance found was that the defendant has shown no remorse for the crimes of which he has been convicted, which is a factor the court considered in calculating the risk that the defendant might commit another crime.

In the case of Ronald Johnson, the court found no mitigating circumstances, but found the following aggravating circumstances: the defendant has a history of criminal activity, i.e., being AWOL from the U.S. Navy and attempted burglary, he is in need of corrective and rehabilitative treatment that can best be provided by his commitment to a penal facility, any imposition of reduced sentence or the suspension of the sentence and imposition of probation would depreciate the seriousness of the crime particularly in light of the nature of the offense and the manner in which the crimes were committed, and Defendant has shown no remorse for the crimes for which he has been convicted, which the court considered a factor in calculating the risk that the defendant might commit another crime.

In the case of Gary Lingler, the court found no mitigating circumstances and in regard to aggravating circumstances found the following: that the defendant violated his conditions of probation issued in Coles County, Illinois, by committing another criminal offense while on probation, the defendant has a history of criminal activity, i.e., robbery, commission of a felony while armed, theft of vehicle, and theft, that he is in need of correctional or rehabilitative

treatment that can best be provided by his commitment to a penal facility, that any imposition of reduced sentence or the suspension of the sentence and imposition of probation would depreciate the seriousness of the crime particularly in light of the nature of the offenses and the manner in which the crimes were committed, and that the defendant has shown no remorse for the crimes of which he has been convicted which the court considered a factor in calculating the risk that the defendant might commit another crime.

The court then found that some of the sentences be served consecutively. The results were that Michael Johnson was given a sentence of ninety (90) years, Ronald Johnson was given a sentence of one-hundred and thirty (130) years, and Gary Lingler was sentenced to a term of two-hundred (200) years.

The aggravating factors found by the trial court in all of these cases are those specifically permitted by statute. Ind.Code § 35–4.1–4–7(c). The trial court may increase the basic sentence, impose consecutive sentences, or both, upon consideration of relevant information. *Petruso v. State*, (1982) Ind., 441 N.E.2d 446. The sentences given by the trial court were authorized by statute and are not manifestly unreasonable in light of the nature of the offenses and the character of the offenders. The trial court also properly specified his reasons for imposing consecutive sentences. *Tucker v. State*, (1983) Ind., 443 N.E.2d 840 *reh. denied.*

The record shows here the defendants physically forced the victim into their automobile at knife point and gun point and spent three and one-half hours with her, during which time they continually physically and sexually assaulted her by forcing her to submit to sexual intercourse and sexual deviate acts. They then told her they were taking her home but instead took her to a bridge over a river in Morgan County, tied her hands behind her, and threw her into the icy waters thirty feet below. She suffered frostbite to parts of her face and hands. In view of these facts and circumstances, we find the sentences are within the law and not unreasonable.

Finding no error, the trial court is in all things affirmed.

GIVAN, C.J., and HUNTER, J., concur.

PRENTICE, J., concurs in result.

DeBRULER, J., concurs and dissents with separate opinion.

DeBRULER, Justice, concurring and dissenting.

The decision of the sentencing court to require the sentences of Michael Johnson to be served consecutively, resulting in an aggregate sentence of ninety years is supported by the following findings:

"The Court now finds that the following mitigating and/or aggravating circumstances apply in this case pursuant to IC 35–4.1–4–7:

(a) Mitigating Circumstances—the defendant has no history of delinquency or criminal activity and has apparently lead a law-abiding life for a substantial period before commission of the crime.

(b) Aggravating Circumstances—

1. The defendant is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility.

2. Any imposition of reduced sentence or the suspension of the sentence and imposition of probation would depreciate the seriousness of the crime, particularly in light of the nature of the offense and the matter in which the crimes were committed.

3. That the defendant has shown no remorse for the crimes of which he has been convicted which is a factor the Court does consider in calculating the risk that the defendant might commit another crime."

It appears to me that the reasons given here for imposing consecutive sentences upon Michael Johnson are not sufficiently specific and individualized. Paragraphs (b) 1, and (b) 2, simply repeat statutory language, and (b) 3, tells us that he has shown

no remorse and the court used that in considering whether he might commit another crime. The court does not even find that the risk is substantial that he might commit another crime. There may be a good reason for the sentences of this first offender to run consecutively, but they do not appear in these findings. I would remand for a new sentencing hearing for this defendant, or in the alternative that a concurrent sentence order be imposed.